## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

　　　　　Plaintiff,

　　vs.                                          No. CR 06-1622 MCA

**STEVEN ELLERY SPRINGER**,

　　　　　Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court for sentencing following a jury trial at which Defendant Steven Ellery Springer was found guilty of knowingly engaging in abusive sexual contact with Jane Doe, an Indian juvenile who had not attained the age of twelve (12) years, in violation of 18 U.S.C. §§ 2244(a)(1) & (c), 2246(3), and 1152.  The Court held sentencing hearings in Albuquerque, New Mexico, on December 5, 2007, and February 15, 2008, at which Defendant and counsel were present.  Having fully considered the parties' submissions, the pre-sentence report and addendum thereto, the applicable law, the evidence and the arguments of counsel presented at the hearings, and being fully advised in the premises, the Court imposes a term of imprisonment of 240 months for the reasons set forth at the hearing on February 15, 2008, which are further documented below.

On February 15, 2007, the jury returned a verdict finding Defendant guilty of one count of abusive sexual contact of a minor as charged in the *Indictment*.  [Doc. 67.]  This

crime arose from an incident where witnesses observed Defendant touching and rubbing the clothed groin or vaginal area of his then six year-old victim (identified in the *Indictment* as "Jane Doe") while he worked as a carnival game operator during the Laguna Pueblo Feast Day on or about September 18, 2005.  Witness Levi Francis testified that as he observed the child kneeling on the table at the game stand, a man (identified as Defendant) stood next to her and "would look around, and when he was done looking around, he would put his hand between her legs."  [Tr. 2-15-07.]  Mr. Francis also testified that he observed Defendant rub the child in her vaginal area with his hand, first using his thumb and then his fingers.  Mr. Francis' testimony was corroborated by that of Witness Shauna Lewis, who testified that she too observed Defendant touch the child's vaginal area.

As these witnesses were summoning the police to investigate, Defendant was observed taking his victim by the shoulder and patting her buttocks as he led her away from the carnival booth area.  At trial, the child described the manner in which Defendant touched her and testified that he "started forcing me to walk with him before I could finish the game." [Tr. 2-15-07.]  Officer William Cunningham testified at trial that when he was summoned to investigate, he observed the Defendant walking with the child, "hugging her into him." [Tr. 2-15-07.]  He described Defendant's hand as traveling from the middle of the child's back down to the small of her back to the buttocks.  He described the Defendant's hand as using a rubbing motion.  To Officer Cunningham, the child appeared scared.

Both before and during the trial, the Court also heard testimony from two other victims who described a series of prior incidents occurring in Asheville, North Carolina in

June 1997, when Defendant engaged in several similar instances of sexual contact with three young girls then aged nine, eight, and seven. According to the witnesses' testimony, these contacts involved Defendant touching the girls underneath their clothing on their breasts and vaginal areas.

Although not presented to the jury at trial, the Government also has come forward with evidence that, with respect to the June 1997 incidents in North Carolina, Defendant pleaded guilty and was convicted of three counts of Indecent Liberties With a Child in violation of North Carolina Statute 14-202.1. For sentencing purposes, the Government contends that when combined with the present offense, these prior convictions qualify Defendant for a mandatory life sentence under 18 U.S.C. § 3559(e). In the alternative, the Government contends that if Defendant does not qualify for a mandatory life sentence under that statute, then the Court should depart or vary upwards from the range suggested by the United States Sentencing Guidelines and impose the statutory maximum penalty of twenty (20) years of imprisonment under 18 U.S.C. § 2244(a)(1) and (c). Defendant opposes these requests and asks the Court to sentence him within a guideline range of fifty-seven (57) to seventy-one (71) months.

## I.   MANDATORY SENTENCING UNDER 18 U.S.C. § 3559(E)

The Court first addresses the Government's contention that Defendant qualifies for a mandatory life sentence under 18 U.S.C. § 3559(e). This statute provides that: "A person who is convicted of a Federal sex offense in which a minor is the victim shall be sentenced to life imprisonment if the person has a prior sex conviction in which a minor was the victim,

unless the sentence of death is imposed." 18 U.S.C. § 3559(e)(1). It is beyond dispute that the crime for which Defendant was convicted in the case at bar meets the statutory definition of a "Federal sex offense," as this definition plainly includes "an offense under section . . . 2244(a)(1) (relating to abusive sexual contact)." Id. § 3559(e)(2)(A). The *Indictment* [Doc. 16], *Court's Jury Instructions* [Doc. 57], and *Verdict* [Doc. 67] all make clear that the Defendant was charged with and convicted of abusive sexual contact under 18 U.S.C. § 2244(a)(1) (prior to amendments of July 27, 2006).[1]

The question remains whether any of Defendant's 1997 convictions under the North Carolina statute fall under the statutory definition of a "prior sex conviction" for purposes of imposing *mandatory* life imprisonment under 18 U.S.C. § 3559(e). To resolve this question, the Court applies the modified categorical approach first articulated in Taylor v. United States, 495 U.S. 575 (1990), and more recently clarified in Shepard v. United States, 544 U.S. 13 (2005). Under this approach, Defendant may qualify for a mandatory life

---

[1]The Court notes that 18 U.S.C. § 2244 was amended on July 27, 2006, to add a new subsection (a)(5) which creates a statutory maximum sentence of life imprisonment for the crime of knowingly engaging in sexual contact with another person who has not attained the age of 12 years. See Adam Walsh Child Protection and Safety Act of 2006, Pub. L. 109-248, § 206, 120 Stat. 587, 614 (July 27, 2006) (codified as 18 U.S.C. § 2244(a)(5)). In this case, however, Defendant was indicted on July 25, 2006, for a crime committed on or about September 18, 2005, and the parties do not dispute that the version of the statute predating the amendments of July 27, 2006, applies here. Under that version, 18 U.S.C. § 2244(a)(1) cross-references 18 U.S.C. § 2241 in its entirety (including 18 U.S.C. § 2241(c)), and therefore the former statute covers knowingly engaging in sexual contact with a person who has not attained the age of 12 years. See United States v. John, 309 F.3d 298, 301 (5th Cir. 2002). All references in this *Memorandum Opinion and Order* to these statutory provisions refer to the version of the statute in effect prior to the amendments of July 27, 2006.

sentence only if the full range of conduct covered by the North Carolina statute falls within the meaning of a "prior sex conviction" under 18 U.S.C. § 3559(e), see United States v. Sinerius, 504 F.3d 737, 740 (9th Cir. 2007), or if the Court can determine that Defendant's prior convictions fall within this statutory definition based on "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." Shepard, 544 U.S. at 26.

The Court's task of comparing Defendant's prior convictions under the North Carolina statute with the federal statute's definition of "prior sex conviction" is further constrained in two important respects. First, unlike some other mandatory sentencing statutes, the meaning of "prior sex conviction" under 18 U.S.C. § 3559(e) does not depend on a generic, common-sense notion of what constitutes sexual abuse, but is instead defined by a series of cross-references to other, highly technical definitions of specific sex crimes. See Sinerius, 504 F.3d at 743-44. In particular, the federal statute at issue here defines "prior sex conviction" as "a conviction for which the sentence was imposed before the conduct occurred constituting the subsequent Federal sex offense, and which was for a Federal sex offense or a State sex offense." 18 U.S.C. § 3559(e)(2)(C). A "State sex offense" is further defined as "an offense under State law that is punishable by more than one year in prison and consists of conduct that would be a Federal sex offense if" the jurisdictional requirements of the federal statutes had been satisfied. Id. § 3559(e)(2)(B).

As the Court previously noted in its *Memorandum Opinion and Order* [Doc. 50] filed on February 9, 2007, the North Carolina statute under which Defendant was previously convicted in 1997 is not limited to instances of sexual contact or touching of specific parts of the body because it also proscribes the "'performance of any immoral, improper, or indecent act in the presence of a child for purpose of arousing or gratifying sexual desire.'" United States v. Pierce, 278 F.3d 282, 287 (4th Cir. 2002) (quoting State v. Hartness, 391 S.E.2d 177, 180 (N.C. 1990)).  Because performing an act "in the presence of a child" does not necessarily entail any physical contact with specific parts of a child's body, it is possible to violate this North Carolina statute without engaging in a "sexual act" or "sexual contact" as those terms are defined in 18 U.S.C. §§ 2246 and incorporated as essential elements of an offense under 18 U.S.C. §§ 2241, 2242, 2243, or 2244.  And if Defendant's prior convictions under the North Carolina statute were not based on a "sexual act" or "sexual contact" within the meaning of the federal statutes, then it is possible that these prior convictions would not meet the statutory definition of a "prior sex conviction" under 18 U.S.C. § 3559(e)(2)(C).

To preclude this possibility, the Government contends it is obvious that Defendant's 1997 convictions under the North Carolina statute must have involved "sexual contact" or a "sexual act" within the meaning of 18 U.S.C. § 2246, because victims of the North Carolina crimes testified under oath before and during Defendant's trial in the case at bar, and that testimony clearly indicates that the prior crimes involved Defendant touching the victims' genitalia, anus, groin, breast, inner thigh, or buttocks with the requisite intent.  In response to this contention, Defendant asserts that the court records regarding his 1997 convictions

-6-

from North Carolina do not contain an express finding that he engaged in the specific conduct identified by the victims who testified at his trial in the case at bar.

This dispute over the factual basis for Defendant's 1997 crimes gives rise to the second important constraint on the Court's ability to compare his convictions under the North Carolina statute with the federal statute's definition of "prior sex conviction." Under the Sixth Amendment as interpreted by <u>Shepard</u> and its progeny, "any fact other than a prior conviction sufficient to raise the limit of the possible [mandatory] federal sentence must be found by a jury, in the absence of any waiver of rights by the defendant." <u>Shepard</u>, 544 U.S. at 24. Courts interpreting this requirement have recognized a distinction between *the fact of* a prior conviction and *facts about* a prior conviction. <u>See, e.g.</u>, <u>United States v. Washington</u>, 404 F.3d 834, 842-43 (4th Cir. 2005); <u>United States v. Garner</u>, 223 Fed. Appx. 792, 796-97 (10th Cir. 2007) (unpublished disposition). Under these authorities, the factual basis supporting a prior conviction falls into the latter category and therefore cannot depend on judicial factfinding if used to support a mandatory sentence under 18 U.S.C. § 3559(e).

While the jurors in this case heard testimony from victims of Defendant's North Carolina crimes, the jury made no specific findings as to whether his prior convictions for those crimes involved "sexual contact" or a "sexual act" under 18 U.S.C. § 2246, nor were such findings necessary to its guilty verdict. Under these circumstances, Defendant claims he has not waived or forfeited his right to have a jury decide facts about the basis for his North Carolina convictions.

Nevertheless, the requirements of the Sixth Amendment as interpreted by <u>Shepard</u> and its progeny do not preclude this Court from looking to glean such information from "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information."  <u>Shepard</u>, 544 U.S. at 26.  Further, "the most appropriate sources for the district court to consult to determine whether a given fact was necessarily established 'in pleaded cases' are 'the statement of factual basis for the charge . . . shown by a transcript of plea colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea.'"  <u>United States v. Rosa</u>, 507 F.3d 142, 158 (2d Cir. 2007) (quoting <u>Shepard</u>, 544 U.S. at 20-21).  "With such material in a pleaded case, a later court could generally tell whether the plea had 'necessarily' rested on the fact" at issue. <u>Shepard</u>, 544 U.S. at 20-21.

Accordingly, this Court has afforded the parties additional time to search for and produce the relevant aspects of the judicial record concerning Defendant's North Carolina convictions dating from 1997.  In response, the Government has presented a certified copy of the transcript of the hearing at which Defendant pleaded guilty to the North Carolina charges on December 12, 1997.  The transcript indicates that shortly after Defendant entered his guilty plea, his counsel at that time, Mr. Leslie, stated that:  "We would stipulate to a factual basis and allow the State to summarize."  [Tr. 12-12-97, at 5.]  The prosecutor, Mr. Moore, then stated that "the three counts involve three different young victims, one who is

seven, one who is eight and one who is nine.  Two were sisters.  All three were staying in a home here in Buncombe County, where this defendant was also staying.  Over the course of about a week on each of the occasions each of the victims alleged that on or about the date alleged he touched them under their shirt or *perhaps* in their pants, rubbed them, put them on his lap, *etc., etc.*, several times with each of the victims."  [Tr. 12-12-97, at 6 (emphasis added).]  When the sentencing judge asked Defendant's counsel if there was anything that he wanted to add to or subtract from the summary of the facts just provided by the prosecutor, Defendant's counsel stated:  "No, sir."  [Tr. 12-12-97, at 7.]

There is some disagreement about whether a stipulation by a defendant's counsel counts as an admission by the defendant himself for purposes of establishing the factual basis for a plea under Shepard's modified categorical approach.  Compare United States v. Hernandez-Hernandez, 431 F.3d 1212, 1219 (9th Cir. 2005) (majority opinion holding that "criminal defendants are bound by the admissions of fact made by their counsel in their presence and with their authority" in this context), with id. at 1226 (opinion of Kleinfeld, J., dissenting on this issue and noting that Shepard's express language only referred to a plea colloquy between judge and *defendant*, not between judge and defendant's *counsel*).  The majority view appears to favor adoptive admissions made through counsel or the sentencing judge.  See, e.g., United States v. Kappell, 418 F.3d 550, 560-61 (6th Cir. 2005) (accepting defense counsel's stipulation regarding the factual basis for a plea of no-contest as a comparable judicial record on which to base a sentencing enhancement under Shepard);

United States v. Miller, 478 F.3d 48, 51-52 (1st Cir. 2007) (concluding that a defendant silently adopted the sentencing judge's characterization of the factual basis for his plea).

But even if this Court were to accept the stipulation of Defendant's prior counsel, Mr. Leslie, as to the factual basis summarized by the prosecutor during the plea colloquy concerning Defendant's North Carolina convictions, there remains considerable ambiguity in the prosecutor's remarks. Should the prosecutor's references to touching or rubbing under the victims' shirts or "perhaps in their pants" be characterized as a circumspect way of referring to particular body parts or particular areas of the body, or does such a characterization require the Court to make the kind of additional inferences which are prohibited under Shepard? Is it possible that Defendant put the victims on his lap without making contact with the parts of the body referenced in the federal statutes' definitions of "sexual act" or "sexual contact"?

For this Court to make such inferences would constitute the type of judicial factfinding prohibited by Shepard for a mandatory sentence. While common sense might dictate an obvious answer to the above questions, the mandatory sentencing scheme at issue here instead employs a set of highly technical definitions and prohibits the Court from filling the gaps in these definitions by means of judicial factfinding. Such judicial factfinding occurs when the Court must look to the evidence before it and draw its own inferences, "rather than determining what inferences were compelled by the state record of conviction." Rosa, 507 F.3d at 161.

To bring Defendant's North Carolina convictions within the definition of a "prior sex conviction" under 18 U.S.C. § 3559(e), the Court would have to engage in judicial factfinding because the prosecutor's statement of the stipulated factual basis for Defendant's 1997 plea is too ambiguous to compel the inference that Defendant's contacts with his North Carolina victims necessarily involved "the touching of certain body parts" incorporated into the federal statutes' definitions of "sexual act" or "sexual contact." United States v. Lockwood, 446 F.3d 825, 828 (8th Cir. 2006). In light of the precedent which prohibits judicial factfinding for this purpose, the Court cannot impose a mandatory life sentence in this case pursuant to 18 U.S.C. § 3559(e). The Court is instead left with no choice but to conclude, as a matter of law, that none of the Defendant's North Carolina convictions dating from 1997 qualify as a "prior sex conviction" within the meaning of 18 U.S.C. § 3559(e)(2)(C).

## II.   CALCULATING THE STATUTORY MAXIMUM AND ADVISORY IMPRISONMENT RANGE UNDER THE SENTENCING GUIDELINES

I next consider the Government's alternative argument that, in the absence of such a mandatory life sentence, it is still within the Court's discretion to impose a statutory maximum sentence of twenty (20) years in this case. Here Defendant was convicted of abusive sexual contact under the version of 18 U.S.C. §§ 2244(a) and (c) in effect prior to July 27, 2006. As with the mandatory sentencing scheme under 18 U.S.C. § 3559(e), the statutory maximum sentence for "abusive sexual contact" is defined through a series of cross-references to other statutory provisions. The statutory provision under which

Defendant was convicted in this case provides for a fine and/or imprisonment for "not more than ten years." 18 U.S.C. § 2244(a)(1). But the maximum sentence for abusive sexual conduct under the version of 18 U.S.C. § 2244(a)(1) in effect prior to July 27, 2006, is doubled if the sexual contact "is with an individual who has not attained the age of 12 years." 18 U.S.C. § 2244(c). Thus, Defendant faces a statutory maximum sentence of twenty (20) years in this case.

Unlike a sentence under 18 U.S.C. § 3559(e), the statutory maximum sentence under 18 U.S.C. § 2244 is not mandatory. It follows that the Court must exercise its discretion in order to determine the appropriate sentence under the latter statute (§ 2244), taking into account the calculation of an advisory sentencing range under the United States Sentencing Guidelines, as well as due consideration of other factors referenced in 18 U.S.C. § 3553(a).

The Court's analysis begins with the calculation of a sentencing range under the United States Sentencing Guidelines. According to the criminal history calculation in Paragraphs 26 through 31 of the re-disclosed Pre-Sentence Report (PSR)[2], Defendant's three prior convictions for the North Carolina crimes occurring in 1997 give him a criminal-history category of II. I find that this calculation is correct, and I specifically find that Defendant was the same person who pleaded guilty and was convicted of three offenses under the North Carolina statute in 1997. See Garner, 223 Fed. Appx. at 796-97 (concluding that judicial

---

[2]All references to the PSR in this *Memorandum Opinion and Order* are to the version containing a re-disclosure date of November 13, 2007, with addendums dated November 20, 2007, and January 8, 2008.

factfinding with respect to a defendant's identity is permissible for purposes of establishing the fact of a prior conviction).

Paragraph 17 of the PSR further calculates a base offense level of 20 for Defendant's present offense of abusive sexual contact in violation of 18 U.S.C. §§ 2244(a)(1) and (c), because the offense involved conduct described in 18 U.S.C. § 2241(a) or (b).  See U.S.S.G. §2A3.4(a).  The Court finds that this offense level is correct and specifically finds that Defendant used force within the meaning of 18 U.S.C. § 2241(a)(1) by physically moving or holding the six year-old child victim in the position on the carnival game counter where Defendant began to  touch and rub her clothed vaginal area, then physically grabbing and pulling the victim to lead her away from the carnival booth area, and forcing the child to walk with him, during which time he patted her buttocks and used a rubbing motion.  See United States v. Lauck, 905 F.2d 15, 17 (2d Cir. 1990) (explaining statutory definition of "force"); United States v. Allery, 139 F.3d 609, 611 (8th Cir. 1998) (same).  In support of this finding, I specifically note the testimony of the child victim and Officer William Cunningham (both of whom performed a demonstration at trial to show what Defendant was doing to the victim), as well as the testimony of witnesses Levi Francis and Shauna Lewis. [Tr. 2-15-07.]

As stated in Paragraph 18 of the PSR, a 4-level increase is then added to account for the specific offense characteristic that the victim had not attained the age of twelve years. See U.S.S.G. § 2A3.4(b)(1); United States v. Ward, 957 F.2d 737, 740 (10th Cir. 1992) (applying Guidelines in effect prior to Nov. 1, 2004, amendments).  Defendant contends that

the guideline calculation should stop at this point, with an offense level of 24 and a criminal history category of II, resulting in a guideline imprisonment range of 57 to 71 months. [Doc. 87.]

A.   **Application of U.S.S.G. § 4B1.5(b)(1)**

In Paragraph 23, however, the PSR recommends that the Court make an upward adjustment of 5 levels under U.S.S.G. § 4B1.5(b)(1) because the instant offense of conviction is a covered sex crime, and the Defendant engaged in a pattern of activity involving prohibited sexual conduct.  "A 'pattern of activity' for the purposes of § 4B1.5(b)(1) occurs when the defendant engages in the prohibited sexual conduct with a minor on at least two separate occasions."  United States v. Peck, 496 F.3d 885, 890 (8th Cir. 2007) (citing U.S.S.G. § 4B1.5, cmt. n. 4(B)(i)).  The commentary to this guideline provision further states that:  "An occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion."  U.S.S.G. § 4B1.5, cmt. n. 4(B)(ii).  Because the definition of "prohibited sexual conduct" in U.S.S.G. § 4B1.5, cmt. n. 4(A) includes "any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B)," and that statutory provision cross-references all of the crimes in 18 U.S.C. §§ 2241 through 2248, it follows that "prohibited sexual conduct" includes "abusive sexual contact" under 18 U.S.C. § 2244.

Defendant contends that none of his North Carolina convictions dating from 1997 fall under this definition for the reasons previously stated in the above discussion of the

*mandatory* sentencing provisions of 18 U.S.C. § 3559(e).  I reject this contention because the guideline provision at issue here is only being used to calculate an *advisory* sentencing range.

To determine whether the guideline adjustment in U.S.S.G. § 4B1.5 applies for purposes of calculating an *advisory* guideline range, I find that the Court is permitted to use facts found by a preponderance of the evidence.  See United States v. Cordova-Arevalo, 456 F.3d 1229, 1232 n.7 (10th Cir. 2006) (noting that the categorical approach articulated in Shepard does not apply "in deciding if a departure from the guidelines is appropriate or, post-Booker, an exercise of sentencing discretion is warranted"); United States v. Wilfong, 475 F.3d 1214, 1219 (10th Cir. 2007) (collecting cases); United States v. Trujillo, 247 Fed. Appx. 139, 143-44 (10th Cir. 2007) (same); United States v. Kirkpatrick, 211 Fed. Appx. 174, 175-76 (4th Cir. 2006) (unpublished disposition affirming enhancement under U.S.S.G. § 4B1.5(b)); United States v. Brown, No. 05-3732, 2006 WL 3203747, at *10 (6th Cir. 2006) (same).  In this context, the Court's factual findings are directed at whether a pattern of prohibited sexual conduct *occurred*, regardless of whether such conduct resulted in a qualifying conviction (as would be required under 18 U.S.C. § 3559(e)).  See U.S.S.G. § 4B1.5 cmt. n. 4(B)(ii).  The Court must, however, "explicitly state which statutory offenses constitute the 'prohibited sexual conduct.'"  United States v. Phillips, 431 F.3d 86, 94 (2nd Cir. 2005).

In this case, I find by a preponderance of the evidence that Defendant has engaged in a pattern of activity involving prohibited sexual conduct with a minor within the meaning of U.S.S.G. § 4B1.5(b).  The first occasion on which Defendant engaged in  prohibited sexual

-15-

conduct with a minor occurred during the course of a week in June 1997 in North Carolina, when he performed at least one act amounting to abusive sexual contact under 18 U.S.C. § 2244 with at least one victim under twelve years of age.  That contact included the intentional touching, either directly or through the clothing, of the victim's groin, breast, inner thigh, and buttocks with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the Defendant's sexual desire, as defined in 18 U.S.C. § 2246(3).

In support of my findings with respect to this first occasion of prohibited sexual conduct, I draw reasonable, common-sense inferences from the judicial record of the 1997 plea colloquy in which Defendant's counsel stipulated to the prosecutor's summary of the factual basis for Defendant's guilty plea.  I also credit the subsequent testimony of the victims of Defendant's prior crimes who appeared in this Court both before and during Defendant's trial in the case at bar.

I further find that there was a second occasion when Defendant engaged in prohibited sexual conduct with a minor, *i.e.*, when he committed the same offense for which he was tried before a jury and found guilty beyond a reasonable doubt in the case at bar.  During that incident, the abusive sexual contact occurred when Defendant fondled and rubbed the buttocks and groin of his then six year-old victim (identified in the *Indictment* as "Jane Doe") while he worked as a carnival game operator at the Laguna Pueblo Feast Day on or about September 18, 2005.  This offense is also a "covered sex crime" within the meaning of U.S.S.G. § 4B1.5(b) and cmt. n. 2.

The final requirements of U.S.S.G. § 4B1.5(b) are that neither U.S.S.G. § 4B1.1 (career offender) nor U.S.S.G. § 4B1.5(a) are applicable here.  While neither party has submitted evidence in support of a career-offender enhancement under § 4B1.1, there is an open question as to whether § 4B1.5(a) applies in the context presented here.  The difference between § 4B1.5(a) and § 4B1.5(b) is that the former requires at least one prior "sex offense conviction" perpetrated against a minor, while the latter requires only "a pattern of activity involving prohibited sexual conduct" against a minor (regardless of whether that activity resulted in a conviction).

### B.      Application of U.S.S.G. § 4B1.5(a)

The PSR appears to assume that because none of Defendant's North Carolina convictions dating from 1997 can be counted as a "prior sex conviction" for the purpose of applying a mandatory life sentence under 18 U.S.C. § 3559(e), the same rule would preclude this Court from counting any of those North Carolina convictions as a prior "sex offense conviction" for the purpose of applying an advisory Guideline calculation under U.S.S.G. § 4B1.5(a).  This assumption may have been correct in the pre-Booker era when district courts treated Guideline enhancements as mandatory, thereby invoking the Sixth Amendment's prohibition on judicial factfinding.  See, e.g., United States v. Schlake, 178 Fed. Appx. 755, 757 (9th Cir. 2006) (unpublished disposition).   But insofar as an enhancement under the Guidelines is now *advisory* rather than *mandatory*, I question whether the prohibition on judicial factfinding with respect to a *mandatory* sentence under 18 U.S.C. § 3559(e) would

also apply to the calculation of an *advisory* Guideline enhancement under U.S.S.G. § 4B1.5(a).

Insofar as the Court is permitted to engage in such factfinding for the purpose of determining whether any of Defendant's North Carolina convictions dating from 1997 qualify as a prior "sex offense conviction" under U.S.S.G. § 4B1.5(a), I draw the reasonable, common-sense inference that at least one of the North Carolina crimes to which Defendant pleaded guilty in 1997 falls within that definition.  In particular, I find that it is reasonable to infer that Defendant stipulated to the factual basis for his 1997 guilty pleas, which is summarized in the prosecutor's remarks contained in the transcript of the plea colloquy.  I also find it reasonable to infer that the prosecutor's summary of the factual basis for those pleas was meant and understood to refer to at least one instance of conduct that would fall under the definition of "abusive sexual contact" in 18 U.S.C. §§ 2244(a)(1), (c), and 2246(3), *i.e.*, the type of conduct about which two of the victims of Defendant's North Carolina crimes testified under oath and in his presence both before and during the trial in the present case.

On the basis of these findings, the Court determines that the appropriate Guideline enhancement is § 4B1.5(a) rather than § 4B1.5(b), and the PSR is so modified to reflect this determination.  Pursuant to § 4B1.5(a)(1), the offense level is therefore raised to 32, and pursuant to § 4B1.5(a)(2), Defendant's criminal-history category is raised to a Category V, for a Guideline imprisonment range of 188 to 235 months.

In the event that § 4B1.5(a) does not apply for any reason, then the final requirement of § 4B1.5(b) would be satisfied, and the Court would instead, in the alternative, apply the

latter Guideline enhancement.  Under § 4B1.5(b), Defendant's offense level would be raised from 24 to 29, producing a guideline imprisonment range of 97 to 121 months (assuming a criminal-history category of II).  I find no basis for a downward departure or downward variance from either of the advisory sentencing ranges calculated above, and Defendant has submitted none.

## III.   UPWARD DEPARTURE OR VARIANCE

The Court next addresses the Government's argument that, regardless of where the advisory imprisonment range falls under the Sentencing Guidelines, the Court should depart or vary from that advisory range and impose the statutory maximum penalty of 20 years imprisonment.  The Government provided Defendant and the Court with notice of its intent to seek a penalty above the guideline range in its *Response* [Doc. 85] filed on December 3, 2007.  That response, in turn, was prompted by the Probation Officer's re-disclosure of a revised PSR on November 13, 2007, which withdrew the earlier recommendation for a mandatory life sentence under 18 U.S.C. § 3559(e).

Before 2005, the Court would have considered the Government's arguments for an upward departure solely under the authority of U.S.S.G. § 5K2.0(a)(1)(B) and 18 U.S.C. § 3553(b)(2)(A)(I).  Both of these provisions allow for upward departures if the Court finds that "there exists an aggravating circumstance, of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described."  U.S.S.G. § 5K2.0(a)(1)(B).

With the advent of United States v. Booker, 543 U.S. 220 (2005), and its progeny, the Court now recognizes that the Guidelines standards for calculating an imprisonment range or granting an upward departure are no longer mandatory, nor may a district court treat them as if they were presumptively correct. Both the Supreme Court and the Tenth Circuit have recently begun to clarify the standard of review for evaluating the reasonableness of sentences outside the advisory guideline range under the post-Booker framework and the factors articulated in 18 U.S.C. § 3553(a). See United States v. Gall, 128 S. Ct. 586 (2007); United States v. Akers, No. 06-3241, 2008 WL 152604, at *5 (10th Cir. 2008) (unpublished disposition noting that the more rigorous pre-Booker departure analysis has been replaced by a more deferential standard).

In particular, the Gall opinion instructs that "a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain [her] conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." Id. at 594. The advisory Guidelines are, after all, "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." Id. They "should be the starting point and the initial benchmark" in the district court's analysis, but not "the only consideration," for the district court also must consider each of the factors enumerated in 18 U.S.C. § 3553(a) and make an "individualized assessment based on the facts presented." Id. at 596-97. In the end, the justification for an outside-Guidelines sentence must be both

"sufficiently compelling to support the degree of the variance" and accompanied by an explanation that is adequate to allow for meaningful appellate review.  Id. at 597.

These instructions do not mean that a district court can sentence outside the Guideline range only in extraordinary circumstances or in accordance with a rigid mathematical formula of "proportional review" which automatically heightens the level of scrutiny as the percentage of the departure increases.  See id. at 595-96.  While due consideration must be given to "the degree of the variance," the substantive reasonableness of a sentence does not stand or fall on that factor alone; instead, courts must "take into account the totality of the circumstances."  Id. at 597.

In this case, the degree of the requested departure or variance depends on whether one starts from an advisory Guideline sentencing range of 97 to 121 months using the Guideline enhancement for a "pattern of activity involving prohibited sexual conduct" under U.S.S.G. § 4B1.5(b), or an advisory Guideline sentencing range of 188 to 235 months using the Guideline enhancement for a prior "sex offense conviction" under U.S.S.G. § 4B1.5(a).  The requested statutory maximum sentence of 20 years (or 240 months) is not far from the latter calculation, but is almost double the former.

Under either of these alternative Guideline calculations, I find that when placed in the context of the factors enumerated in 18 U.S.C. § 3553(a), the totality of aggravating circumstances in this case is sufficiently compelling to support an upward departure or variance to the statutory maximum sentence of 20 years.  Such a lengthy sentence also

constitutes a logical extrapolation from the principles and policies already stated in the Guideline provisions and relevant statutes directed at repeat sex offenders and pedophiles.

I begin by discussing the nature and circumstances of the offense for which Defendant was convicted in the case at bar.  See 18 U.S.C. § 3553(a)(1).  In this regard, I note that the victim at issue here was an unaccompanied six year-old girl about three feet tall attending a carnival game, while Defendant (acting as the carnival game operator) was a 50 year-old man about five feet eleven inches tall, who is obviously much greater in size and power. Although the Guideline calculations already account for the fact that the victim was under 12 years of age, the victim in this case was only half that age, and in the circumstances presented here, I find that the Guidelines do not adequately account for the victim's vulnerability or the seriousness of the offense.

I also find that the Guideline calculations do not adequately account for aggravating circumstances relating to the culpability of the Defendant.  In this regard, I find that at the time of the offense, Defendant was an unregistered sex offender who deliberately took a position as a carnival game operator where he was very likely to come into contact with young children, so that he could lie in wait for his victim using the lure of the carnival game and its prizes.  These circumstances indicate premeditation and an elaborate degree of preparation, rather than an isolated opportunistic crime or a momentary loss of impulse control.

I further find that Defendant did not limit himself to one instance of abusive sexual contact in the carnival booth area.  The trial testimony, which I find to be credible, indicates

-22-

that Defendant was not content to let the child go after fondling her at the carnival booth.

Instead, he led her away from the carnival booth towards a darker and more secluded area

while putting his hand on top of her buttocks using a rubbing motion, as described by Officer

Cunningham during his trial testimony. The child described the departure from the game

booth in terms of Defendant "forcing me to walk with him before I could finish the game."

[Tr. 2-15-07.] Under these circumstances, it is reasonable to infer that up until the moment

of his capture, Defendant intended to remove the child to a more private and unprotected

location where he could engage in further sexual abuse of a more serious nature.

I next consider the history and characteristics of the Defendant. See 18 U.S.C. §

3553(a)(1). The Guidelines already take into consideration the general principle that repeat

sex offenders are associated with a significant risk of recidivism, and I do not rely on that

general principle alone as a basis for imposing a longer sentence than is contemplated by the

Guideline calculations. See United States v. Poynter, 495 F.3d 349, 354 (6th Cir. 2007),

abrogated in part by Gall, 128 S. Ct. at 595-96. Rather, I make additional and more specific

inferences about Defendant's unusually high risk of recidivism based on an individualized

evaluation of the particular circumstances of this case.

Such a high risk of recidivism can be reasonably inferred not only from the

aforementioned evidence of Defendant's intentions and premeditation with respect to the

instant offense on or about September 18, 2005, but also from his criminal history, which

includes a 1982 conviction for lewd and lascivious behavior in the presence of a child (noted

in Paragraph 29 of the PSR) as well as his three North Carolina convictions dating from the

1997 incidents discussed above.   I further note the fact that Defendant has not accepted responsibility for his present conviction in the case at bar.  The totality of the circumstances in this case indicates that Defendant is a pedophile whose impulse to molest young girls has not been deterred by his past imprisonment and probation.  Defendant has demonstrated by his past behavior that he is willing to arrange his entire life around this perverse impulse, even if it means enduring periods of incarceration, traveling around the country, and taking on work as a carnival game operator in at least four states in the American Southwest in order to avoid detection and gain access to his victims.

I next consider the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the Defendant, and provide the Defendant with needed correctional treatment.  See 18 U.S.C. § 3553(a)(2). Given my findings that the circumstances of the offense are extremely serious and that Defendant poses an unusually high risk of recidivism, I determine that a sentence within the Guideline range would not afford adequate deterrence to criminal conduct or protect the public from further crimes of the Defendant.  I further determine that in light of his history and characteristics, Defendant needs long-term sex offender treatment in the highly structured environment of a federal correctional facility.  Under these circumstances, the statutory maximum sentence of 20 years is necessary to provide an adequate degree of protection, deterrence, and treatment.

In the preceding discussion of the mandatory sentencing regime under 18 U.S.C. §
3559 and the Guideline calculations, I already have discussed the kinds of sentences
available for comparable offenses under the relevant statutes, Guideline provisions, and
policy statements.  See 18 U.S.C. §§ 3553(a)(3), (4), (5).  This discussion gives rise to "the
need to avoid unwarranted sentence disparities among defendants with similar records who
have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), for the only thing
separating the Defendant in this case from a mandatory life sentence under 18 U.S.C. §
3559(e), is the lack of particularity in the words spoken by the prosecutor when he
summarized the factual basis for Defendant's guilty plea concerning his three North Carolina
convictions dating from 1997.  Such specificity is required for a mandatory sentence to
comply with the Sixth Amendment pursuant to Shepard and its progeny.  The shorter
advisory Guideline sentencing range of 97 to 121 months under U.S.S.G. § 4B1.5(b) would
apply only if Shepard and its progeny similarly prevented the Court from applying the
lengthier advisory Guideline enhancement under U.S.S.G. § 4B1.5(a) (which results in an
advisory Guideline sentencing range of 188 to 235 months).

If, however, the Court is permitted to engage in judicial factfinding for purposes of
exercising its discretion to arrive at a non-mandatory sentence in this case, then the Court's
task is not limited to parsing the prosecutor's words during the 1997 plea colloquy.  See
Cordova-Arevalo, 456 F.3d at 1232 n.7.  For purposes of taking into account the need for
unwarranted sentencing disparities under an *advisory* sentencing scheme, the Court can
consider a broader range of evidence to determine whether Defendant has been "found

guilty" of conduct that is "similar" to other defendants whose criminal records result in lengthier sentences than the Guideline calculations at issue here. See 18 U.S.C. § 3553(a)(6). And in this regard, I specifically find that to sentence the Defendant in this case to no more than a Guideline imprisonment range of 97 to 121 months would create unwarranted disparities in comparison to other defendants who have been found guilty of similar conduct. I note, for example, that a sentencing range of only 97 to 121 months would be less than some first-time sex offenders receive when they immediately accept responsibility and seek treatment at the time they are apprehended. See, e.g., United States v. Gay, 509 F.3d 1334, 1336-38 (10th Cir. 2007). The need to avoid such unwarranted sentencing disparities weighs in favor of an upward departure or variance in the case at bar.

My decision to depart or vary from the Guideline calculation and impose the statutory maximum sentence of 20 years in this case also follows from a logical extrapolation of the Guideline provisions for underrepresentation of the seriousness of a defendant's criminal history. See United States v. Cramer, 414 F.3d 983, 986-89 (8th Cir. 2005) (applying U.S.S.G. § 4A1.3 in conjunction with an enhancement under U.S.S.G. § 4B1.5(a)); Akers, No. 06-3241, 2008 WL 152604, at *5 (affirming upward departure based on underrepresentation of criminal history that "shows a clear pattern of recidivism"); Clemmer v. United States, No. Civ.A. 04-1266, 2004 WL 1858342, at *3 n.3 (E.D. Pa. 2004) (unpublished disposition applying U.S.S.G. § 4B1.5(a) as the most analogous Guideline provision even though it did not technically apply to the facts presented). Even if Shepard were to prohibit the Court from counting Defendant's three North Carolina convictions in

1997 as "sex offense convictions" under 4B1.5(a) due to a perceived ambiguity in the prosecutor's summary of the factual basis for those convictions, I nevertheless find that there is reliable information (including the North Carolina victims' testimony under oath in the case at bar) which supports the conclusion that the seriousness of Defendant's criminal history is underrepresented in the Guideline calculations.   And even if those Guideline calculations include *one* of Defendant's North Carolina convictions dating from 1997 to apply the enhancement under U.S.S.G. § 4B1.5(a), I note that Defendant pleaded guilty to no less than *three* of the North Carolina crimes, and the victims who testified about those prior crimes in the present case described a pattern of repeated sexual abuse or sexual contact spanning several days.  See Cramer, 414 F.3d at 987.   Exercising my discretion in light of the advisory nature of the Guidelines, I further find that proper remedy for this underrepresentation of the seriousness of Defendant's criminal history is to impose the statutory maximum sentence of 20 years under 18 U.S.C. §§   §§ 2244(a)(1), (c), and 2246(c)(3).

The final factor to be considered under 18 U.S.C. § 3553(a)(7) is "the need to provide restitution to any victim of the offense."  Pursuant to the Mandatory Victim Restitution Act of 1996, the Defendant will be required to make restitution to the victim's mother in the amount of $1,200.00.   But neither such mandatory restitution nor any fine that the Court could impose would even begin to compensate the victim for Defendant's crime. Accordingly, this case is not one where the Defendant's ability to provide restitution provides any grounds for decreasing or offsetting the imprisonment range.

**IT IS THEREFORE ORDERED** that Defendant Steven Ellery Springer is sentenced to a term of imprisonment of 240 months with the additional conditions stated at the sentencing hearing; judgment shall be entered accordingly.

**SO ORDERED** this 15th day of February, 2008, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge